UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>LIAQUAT CHEEMA,<br>Defendant. | 22 Crim. 615 (LGS)<br><br>**OPINION & ORDER** |

LORNA G. SCHOFIELD, District Judge:

Defendant Liaquat Cheema, a sixty-six-year-old inmate at FCI Otisville, moves for a sentence reduction to time served pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act. The Government consents to the motion. For the reasons discussed below, Defendant's motion is granted.

## I. BACKGROUND

Defendant has been incarcerated for approximately seven months since pleading guilty to conspiracy to commit wire fraud. Defendant was involved in a conspiracy from 2014 to 2017 to defraud the City of New York by inflating the hours of labor performed in connection with public contracts for general contracting work at homeless shelters. Defendant was determined to be the leader of the conspiracy because of his position as president of the construction company through which the fraud was perpetrated.

Defendant pleaded guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343. Section 1343 makes it a crime to, among other things, "obtain[] money or property by means of false or fraudulent pretenses" using "wire, radio or television communication in interstate or foreign commerce." 18 U.S.C. § 1343. Defendant's sentencing guidelines range was sixty-three to seventy-eight months. The Probation Office recommended a sentence of forty-eight

months. On September 16, 2025, Defendant was sentenced to forty-eight months in prison followed by two years of supervised release. The Court also ordered forfeiture of $3,267,811.39, owed jointly and severally by the co-defendants. Before sentencing, Defendant made a payment in the amount of $2,500,000, which satisfied his forfeiture obligation. None of Defendant's co-defendants received a sentence of imprisonment.

Defendant filed the instant motion for compassionate release and sentence reduction on September 15, 2026. The Government consents to the motion.

## II. STANDARD

Defendant moves for a reduction of his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act of 2018. Under that provision, a court may reduce a sentence upon a finding that (1) an inmate exhausted his administrative remedies by requesting relief from prison authorities, (2) "extraordinary and compelling reasons warrant such a reduction" and (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021). Under the First Step Act, a court may exercise its "discretion in determining what are extraordinary circumstances." *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). The defendant bears the burden of showing he is entitled to a sentence reduction. *See United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021).

If the defendant establishes extraordinary or compelling circumstances, a court must still consider the sentencing factors under § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see also Keitt*, 21 F.4th at 71. Those factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and

to provide just punishment for the offense"; (3) "the need . . . to protect the public from further crimes of the defendant"; (4) "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" and (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1)-(2), (6); *see also Keitt*, 21 F.4th at 71.

## III. DISCUSSION

### A. Exhaustion

Because the Government has waived the exhaustion requirement in this case, Defendant's failure to exhaust is not fatal to the motion. Under the First Step Act, "a defendant may go to court after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Brooker*, 967 F.3d at 233;[1] 18 U.S.C. § 3582(c)(1)(A). Defendant, through counsel, submitted a request for compassionate release to the warden of FCI Otisville on September 9, 2026, the day after Defendant's family was informed of his hospitalization. Although thirty days has not yet lapsed since Defendant submitted his request, the Government does not oppose the motion on exhaustion grounds.[2] *See United States v. Gentille*, No. 19 Crim. 590, 2020 WL 1814158, at *3 (S.D.N.Y. Apr. 9, 2020) (noting that the "exhaustion

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

[2] In its memorandum of law in support of the motion, Defendant's counsel represented that the Government "oppose[d] the instant request for compassionate release and waiving 18 U.S.C. § 3582(c)(1)(A)'s 30-day exhaustion requirement." Because the Government now consents to the motion, it is assumed that the Government means -- by its statement that it "does not oppose the motion on exhaustion grounds or contest that the Government may waive the exhaustion requirement" -- that it now waives the exhaustion requirement.

requirement is not jurisdictional, but rather is a claims-processing rule that the Government can waive by failing to raise an exhaustion argument").

**B. Extraordinary and Compelling Circumstances**

Defendant has shown extraordinary and compelling reasons that justify a sentence reduction from forty-eight months to time served. "[A] district court's discretion in this area -- as in all sentencing matters -- is broad." *Brooker*, 976 F.3d at 237. "Where no single factor alone may justify release, the total circumstances may still rise to the level of extraordinary and compelling reasons for release." *United States v. Resto*, No. 8 Crim. 757, 2021 WL 1109467, at *2 (S.D.N.Y. Mar. 23, 2021). Under the Sentencing Guidelines, extraordinary and compelling circumstances include those where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B).

The Government does not contest that Defendant's medical condition constitutes an "extraordinary and compelling" reason for relief under the Sentencing Guidelines. Defendant was admitted to Garnet Medical Center on September 1, 2026, following a fall and subsequent neurological deficits. He was subsequently diagnosed as having suffered an acute stroke, which was confirmed by MRI. According to his medical records, Defendant experienced rapid neurological deterioration, necessitating intubation and mechanical ventilation. After being removed from the ventilator, Defendant underwent a procedure to receive a percutaneous endoscopic gastronomy tube, which is a long-term feeding tube surgically inserted through the stomach. According to his medical records, Defendant "requires total assistance [to] manage his daily needs" and will likely require "nursing home level of care." As of September 24, 2026, Defendant is unable to speak or follow

fine motor commands. His left side is paralyzed, and he has only limited use of his right limbs. According to his medical records, there is a "poor prognosis for return to [Defendant's] previous neurological functioning" or "any meaningful recovery." Because Defendant's physical and medical condition "substantially diminishes" his ability to provide self-care and he is "not expected to recover," extraordinary and compelling circumstances exist. *See* U.S.S.G. § 1B1.13(b)(1)(B); *see also, e.g.*, *United States v. Boney*, No. 22 Crim. 381, 2026 WL 1870663, at *2 (S.D.N.Y. June 29, 2026) (granting compassionate release, over the government's opposition, to defendant who, as a result of stroke, "suffers from left-side paralysis . . . , is 'wheelchair-bound,' and requires assistance ambulating, transferring out of bed, . . . and more"); *United States v. Gluzman*, No. 96 Crim. 323, 2020 WL 4233049, at *14 (S.D.N.Y. July 23, 2020) (same for defendant who suffered several strokes and was wheelchair-bound); *United States v. Brown*, 467 F. Supp. 3d 209, 211, 213 (S.D.N.Y. 2020) (same for sixty-five-year-old defendant who had "serious medical conditions," including partial paralysis from past stroke, over government's objections that early release "would be inconsistent with the § 3553(a) factors").

**C. Sentencing Commission's Policy Statements and Section 3553(a) Factors**

Reducing Defendant's sentence satisfies the goals of sentencing and the 18 U.S.C. § 3553(a) factors. Section 3553(a) provides that a sentence should be "sufficient, but not greater than necessary" and that courts must consider, among other factors, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (3) "the need . . . to protect the public from further crimes of the defendant"; (4) "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective

manner" and (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1)-(2), (6); *see also Keitt*, 21 F.4th at 71. "[T]he weight to be afforded any § 3553(a) factor is a matter firmly committed to the discretion of the sentencing judge." *United States v. Verkhoglyad*, 516 F.3d 122, 131 (2d Cir. 2008); *United States v. Schwartz*, No. 24-2454, 2026 WL 671743, at *2 (2d Cir. Mar. 10, 2026).

The first subpart of § 3553(a) requires consideration of the nature and circumstances of the offense, along with the defendant's history and characteristics. All agree that Defendant was convicted of an extremely serious crime, namely conspiracy to commit wire fraud. For years, Defendant led a conspiracy to defraud the City of New York, which scheme involved overbilling for construction and related work at homeless shelters and ultimately caused over $3,000,000 in loss. However, Defendant has maintained a clean disciplinary record since being incarcerated and is classified as being at minimum risk of recidivism. Although a decision to reduce a sentence is never taken lightly, "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553 factors." *Pepper v. United States*, 562 U.S. 476, 491 (2011). Particularly in light of his serious medical condition, Defendant's present-day characteristics and post-sentencing history weigh in favor of release.

The second subpart of § 3553(a) recognizes "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." At sentencing, the Court determined that it was "important to impose a substantial sentence of incarceration in this case to serve" these very purposes. While Defendant has served only approximately fifteen percent of that sentence, the Government acknowledges that Defendant's crime was "a first-time, non-violent offense and that [Defendant] made a substantial repayment of

his ill-gotten gains at the time of sentencing." These considerations, weighed alongside Defendant's medical condition, also weigh in favor of release.

The third subpart of § 3553(a) recognizes "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." This consideration is consistent with the Sentencing Guidelines policy statement that certain sentence reductions should be accompanied by the court's finding that "the defendant is not a danger to the safety of any other person or to the community." *See* U.S.S.G. § 1B1.13(2). Defendant's medical condition, which renders him unable to function independently, leaves no reason to think Defendant will still be a danger to society if released. Defendant's age -- sixty-six years -- also mitigates concerns of recidivism. *See* U.S. Sent'g Comm'n, The Effects of Aging on Recidivism Among Federal Offenders (Dec. 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf [https://perma.cc/3T98-TGU5]; *see also United States v. Piggott*, No. 94 Crim. 417, 2022 WL 118632, at *3 (S.D.N.Y. Jan. 12, 2020) ("It is . . . well established that recidivism decreases significantly with age."); *United States v. Bass*, 462 F. Supp. 3d 176, 189 (N.D.N.Y. 2020) (citing Sentencing Commission's guidelines to support unlikelihood of recidivism given defendant's advanced age and noting that defendant's ability to "largely follow[] the rules while incarcerated suggests that he will do so once released, which minimizes the danger he poses to the community").

The fourth subpart of § 3553(a) addresses "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." The Bureau of Prisons ("BOP") is prepared to transfer Defendant to a facility for long-term care. However, Defendant's counsel represents that the Assistant Health Services Director at FCI Otisville communicated that Defendant will, if he remains

incarcerated, shortly be transferred to a facility in Pennsylvania, which is three hours away from Defendant's family home in Queens and which does not permit visitation. The letters submitted by Defendant's family members evidence their desire to provide Defendant with care and comfort, which would undoubtedly be made more challenging if Defendant was transferred out of state, especially when Defendant is unable to speak to his family over the phone. Defendant's medical needs are acute and would be better served outside of prison.

Finally, reducing Defendant's sentence will achieve the aim of the fifth subpart of § 3553(a), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." As discussed above, Defendant was the only one of the defendants in his case to receive a sentence of imprisonment. While Defendant was the most culpable among the co-defendants and deserved the longest sentence for his leadership role in the crime, a reduction would not create a disparity among co-defendants.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for a sentence reduction to time served is **GRANTED**. Defendant shall be released as soon as possible into the care of his family members, and if needed, transferred to a medical care facility of their choosing. The Government is directed to assist defense counsel in developing a suitable transition plan with the BOP, including family visitations while Defendant is in the BOP's care and custody. By **October 8, 2026**, the Government and Defendant shall file a joint letter detailing what, if any, additional steps are necessary and proposed given Defendant's medical condition, including any resentencing hearing and modification to Defendant's conditions of release.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 232.

Dated: October 1, 2026
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**